Law Office of
**HERNANDEZ & HAMILTON, PC**
The Johnson House Offices
455 West Paseo Redondo
Tucson, Arizona 85701-8254
CLAY HERNANDEZ (AZ010917)
Email: *Clay@Hernandez-Hamilton.com*
Telephone: (520) 882-8823
Fax: (520) 882-8414
Attorney for Defendant

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br><br>vs.<br><br>Carlos Victor Passapera Pinott,<br>Defendant. | No. CR20-01706-TUC-JGZ-MSA<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

The defendant, through his attorney, hereby submits the following sentencing memorandum and recommends a sentence of 135 months' imprisonment for the reasons set forth below.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    BACKGROUND INFORMATION

Carlos Passapera Pinott pled guilty to Counts Four and Six of the Superseding Indictment charging him with Bribery, in violation of 18 U.S.C. § 201(b)(2), and Conspiracy to Possess with Intent to Distribute Fentanyl, Cocaine, and Heroin, in violation of 21 U.S.C. § 846, pursuant to a written plea agreement. The presentence investigation report (PSR) calculates a base offense level of 38, a

two-level enhancement pursuant to USSG § 2D1.1(b)(1) for possessing a dangerous weapon, a two-level enhancement pursuant to USSG § 3B1.3 for abuse of trust, and a three-level reduction pursuant to USSG § 3E1.1(a) & (b) for acceptance of responsibility, for a total offense level of 39.  The PSR recommends a sentence of 262 months' imprisonment followed by five years of supervised release.

For the reasons explained herein, Passapera Pinott contends his base offense level should be set at 34, and he should receive a two-level enhancement pursuant to § 3B1.3, and a three-level reduction pursuant to § 3E1.1(a) & (b), for a **total offense level of 33**.  Counsel undersigned respectfully argues that a sentence of 135 months' imprisonment is appropriate in this case.

## II.   ARGUMENT UNDER GUIDELINES AND 18 U.S.C. § 3553

### A. Applicable Law

At sentencing, the district court must follow the three-step process set forth in *Gall v. United States*, 522 U.S. 38 (2007).  *See* USSG § 1B1.1(a)-(c) (Application Instruction).  First, the court determines the applicable guideline range.  Second, the court determines whether to apply any of the guidelines' departure policy statements to adjust the guideline range.  *Id.*  Third*,* it must consider all factors set forth in 18 U.S.C. § 3553(a), including whether a variance

is warranted.  *Id.*; *United States v. Vasquez-Cruz*, 692 F.3d 1001, 1006 (9th Cir. 2012); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).

**B. Proof Issues**

**1. Quantity of Fentanyl**

The quantity of drugs to be attributed to a defendant in a drug conspiracy for sentencing purposes must be proven by a preponderance of the evidence.  *United States v. Petty*, 992 F.2d 887 (9th Cir. 1993); *United States v. Dare*, 425 F.3d 634, 642 (9th Cir. 2005).  Here, the PSR holds Passapera Pinott responsible for 40,544.44 grams of fentanyl (converted weight of 101,361.10 kg), which purportedly based on the fentanyl seized from Gallardo-Davila's vehicle (38,424.44 g) and her residence (1,120 g).  That amount is overstated for two distinct reasons.

First, Passapera Pinott cannot be held responsible for the 1,120 grams of fentanyl found in Gallardo-Davila's residence because there is no evidence proving he was the source of that supply.  The government observed Passapera Pinott handing two duffle bags to Gallardo-Davila, who was then stopped by agents soon thereafter.  The bags were searched and revealed fentanyl, cocaine, and heroin. While the government has clearly demonstrated Passapera Pinott's responsibility for the drugs in the duffle bags, it has not established by a preponderance of the evidence his connection to the fentanyl and money found in Gallardo-Davila's

residence.  *Dare*, 425 F.3d at 642.  Thus, the fentanyl and money found in Gallardo-Davila's home cannot be attributed to Passapera Pinott.

Second, the government has not adequately proven that the total weight of the fentanyl located in the duffle bags was 38,424.44 grams.  (PSR ¶ 32.)  The amount of fentanyl alleged to be involved in this case has been wildly inconsistent throughout the government's disclosure, its charging documents, and the police reports, and, thus, has not been sufficiently proved.  The government implores this Court to use the MCSO report as "definitive" for determining the weight of fentanyl involved in this case.  (Doc. 128 at 5.)  Passapera Pinott disagrees that the weights listed in the MCSO report as being the most reliable and definitive and instead urges this Court to rely upon the weights listed in the DEA lab reports, which contain the least amount of weight among the varying amounts listed throughout the disclosure.  (Bates 4623-4628.)

The MCSO reports state detectives located 7.7 pounds of fentanyl pills, along with five additional "kilo sized boxes" of fentanyl pills and one kilogram of fentanyl powder in "Bag 1," and 62.7 pounds of fentanyl pills in "Bag 2," which roughly equates to 37.94 kilograms of fentanyl.  (Bates 10059-10072.)  "Bag 1" also contained 1 kilogram of heroin and 21 kilograms of cocaine.  (Bates 10071-72.)  They also located five "kilo sized packages" containing fentanyl pills inside

Gallardo-Davila's residence, for an approximate combined total of 42.94 kilograms of fentanyl.

The government contends the MCSO report is the most definitive, in part, because it is "attended by photos on each of the steps for weighing and searching." (Doc. 128 at 5.)  But the photographs do not tend to make MCSO report more reliable because they: (1) do not depict all of the substances being weighed, (2) are at times inconsistent with the MCSO report, and (3) if anything, raise additional questions about the reliability of the weighing procedures and the total weight of the fentanyl in this case.  For instance, it is unclear whether the photo included in the government's response to Passapera Pinott's objections only depicts the fentanyl pills found in the vehicle or also includes the pills found in Gallardo-Davila's house.[1]  (Doc. 128 at 5.)  The photographs also do not depict the drugs as originally found.  Bates 09820 and 09821 show the duffle bags in the trunk with the drugs inside, but the bags of pills are already marked, which, according to the MCSO report, were later marked by detectives for evidence purposes.  (Bates 10060-10064.)  In other words, the drugs were removed, marked, and then put back into the duffle bags before being photographed in the trunk; thus, they hardly

---

[1]The photo shows blue pills separated into three separate evidence bags, suggesting one of the bags may have contained the pills from Gallardo-Davila's residence.

can be said to accurately depict "each of the steps for weighing and searching," as the government contends.

The MCSO report is also inconsistent with the photos and adds further confusion as to where the fentanyl was found and what amounts were contained in the trunk.  The report states that detectives marked the small bags found in "the right (bag 2) duffle bag" as "B," and the small bags found in "the left duffle bag" as "C," and then weighed one of the "B" and one of the "C" bags.  (Bates 10063.) It then states the "B" bag from the *left* side of the truck weighed 112 grams, whereas the "C" bag from the *right* side of the trunk weighed 113 grams. Meanwhile, the photos depict bag "C" as weighing 111 grams, not 113 grams. (Bates 10070, Bates 10081.)  Given that each gram of fentanyl is treated as 2.5 kilograms of weight for purposes of the guidelines, these seemingly minor discrepancies add up and make a huge difference for sentencing purposes.

Next, there are other discrepancies as to the weight of the fentanyl seized in this case.  A DEA report contained within the government's disclosure states "a vehicle stop of Gallardo and a search warrant at her residence resulted in the seizure of approximately 49.51 kilograms of M30 pills containing fentanyl," along with "23.65 kilograms of cocaine, 1.07 kilograms of heroin, and 1.07 kilograms of fentanyl powder."  (Bates 2926.)  That same report attributes "approximately *41.91 kilograms of blue M30 pills* which tested positive for fentanyl," "approximately

22.48 kilograms of cocaine," another 1.17 kilograms of cocaine, "approximately 1.07 kilograms" of heroin, and "approximately 1.07 kilograms of" powdered fentanyl" to Gallardo-Davila's vehicle. (Bates 2928-29.)

The weights listed in the DEA drug lab reports also differ greatly from the police reports, in particular with respect to the fentanyl tablets, which are listed as follows:

- 5445g (net) of fentanyl tablets (determined by "direct weighing of all units"), Bates 4628

- 995g (net) of fentanyl powder, Bates 4624

- 20.97 kg (net) of cocaine, Bates 4625 & 4627

- 1006 grams (net) of heroin, Bates 4626

The total combined net weight of fentanyl listed in the DEA lab reports is 6,440 grams.  Using the 1gm = 2.5kg conversion ratio, that results in a total converted weight of 16,100kg.  Combining that converted weight with the converted weights of the cocaine (4,200 kg) and heroin[2] (1,000 kg), results in a total converted weight of 21,300 for a base offense level of 34.

Given the government's burden to prove drug weight by a preponderance of the evidence, the substantial discrepancies as to the weight of the fentanyl, and the government's failure to substantiate its claim that the MCSO report states the

---

[2]Passapera Pinott relies on the converted weight calculated in the PSR as to the cocaine and heroin.

"definitive" amount, this Court should attribute the lowest documented weight to Passapera Pinott for sentencing purposes, which are the weights stated in the DEA reports.  (Bates 4623-4628.)

### 2. Alien Smuggling

Next, Passapera Pinott asks that the government's allegation that he engaged in alien smuggling not factor into this Court's sentencing decision because those allegations are insufficiently proven. Passapera Pinott did not engage in alien smuggling.  The government's belief of his involvement in such activities is based on messages contained on the disabled burner phone, as well as statements by Quintero-Gonzalez and Martinez Fontes.  But as Passapera Pinott explained in his objections, he did not possess that phone until around August of 2020—a time after the alien smuggling messages were sent.  In other words, there is no evidence showing the messages sent from that phone prior to August of 2020 were authored by him.   And he maintains the claims made by Quintero-Gonzalez and Martinez Fontes are false, and were made post-arrest (and after consulting with one another) in an effort to obtain favorable results in their own cases.  Indeed, their efforts paid off; both men received time-served sentences and were returned to Mexico in exchange for the statements.

/ / /

/ / /

### 3.  Use of a Firearm Enhancement

Passapera Pinott also should not receive a two-point enhancement for possessing a dangerous during the court of the conspiracy, pursuant to USSG § 2D1.1(b)(1), because there is insufficient proof that he carried a weapon while engaging in conspiracy-related activities. *Cf. United States v. Pham*, 545 F.3d 712, 720 (9th Cir. 2008) ("The government has the burden of proving the facts necessary to support a sentence enhancement by a preponderance of the evidence."); *United States v. Cazares*, 121 F.3d 1241 (9th Cir. 1996) (government must prove by preponderance of the evidence before court can apply two-level increase under § 2D1.1(b)(1)).

Passapera Pinott was never observed possessing a firearm while engaging in conspiracy-related activities. Instead, the PSR imposes a § 2D1.1(b)(1) enhancement based on the "assum[ption]" that Passapera Pinott was wearing his service uniform, including his service weapon, while on duty, and the fact that Passapera Pinott was observed retrieving two duffle bags while on duty.  (Doc. 121 at 27.)  Notably, as the PSR explains, Passapera Pinott was observed by federal agents on August 9, 2020 "retriev[ing] two duffle bags, which he placed in his service vehicle," yet, the agents did not observe him with a weapon.

The government also implicitly acknowledges it has no direct evidence that Passapera Pinott possessed a firearm while engaged in conspiracy-related activities

but nevertheless argues that "the default assumption is that the defendant was properly equipped as a border patrol agent at the time of his criminality." (Doc. 128 at 2.) It then attempts to shift the burden to Passapera Pinott to prove the *absence* of weapon by asserting "[t]here is absolutely nothing in the record or provided for by the defendant" indicating he would "specifically disarm[] himself when picking up drugs." (*Id.*) But it is the government's burden—not Passapera Pinott's—to establish the factual basis for the sentencing enhancement, which it has failed to do. *Pham*, 545 F.3d at 720. Because there is simply insufficient evidence to establish the government's "assumption" that Passapera Pinott possessed a firearm, a § 2D1.1(b)(1) enhancement should not be assessed.

### C. Sentencing parity

Title 18, United States Code Section 3553(a), directs the court to impose a sentence sufficient, but not greater than necessary, considering: the nature and circumstances of the offense, the history and characteristics of the defendant, and "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); *see also United States v. Jaycox*, 962 F.3d 1066, 1071 (9th Cir. 2020) (stating Congress's primary goal in enacting § 3553(a)(6) was "to promote national uniformity in sentencing"). In avoiding unwanted sentencing disparities, courts can consider sentences received by similarly situated co-

defendants *or* defendants in other cases with similar records who have been found guilty of similar conduct.  *See United States v. Wright*, 211 F.3d 233, 238-39 (5th Cir. 2000); *United States v. Willis*, 476 F.3d 103, 110 (2d Cir. 2007).

Here, Passapera Pinott asks this Court to consider several sentences that were recently imposed in the District of Arizona in cases involving similarly-situated defendants, all of whom were United States Border Patrol Agents who became involved in drug trafficking conspiracies, and all of whom received sentences ranging from 72 to 160 months' imprisonment.

On December 14, 2022, Ramon Antonio Monreal-Rodriguez was sentenced to 152 months' imprisonment followed by five years of supervised release (CR-18-02215-001-TUC-JAS.) Monreal-Rodriguez was convicted of conspiracy to possess with intent to distribute cocaine and marijuana, conspiracy to commit the crime of making false statements in connection with acquisition of a firearm, and conspiracy to commit the crime of providing firearms to a convicted felon. Monreal-Rodriguez would retrieve illegally imported narcotics from north of the border and then distribute it to other members of the conspiracy.  He admitted the government could prove an amount of cocaine at or exceeding 116 kilograms and an amount of marijuana at or exceeding 107 kilograms.  Monreal-Rodriguez also transported over 1.2 million dollars in cash to the border for other members of the

conspiracy to smuggle into Mexico, and was involved in two separate conspiracies to acquire firearms through false or fictitious means.

Even though the total weight of narcotics that Passapera Pinott transported was less than the total weight that Monreal-Rodriguez transported, Passapera Pinott faces a higher offense level than due to the harsher conversion ratio used for heroin and fentanyl. Though the guidelines' harsher treatment of fentanyl may be completely logical, it can lead to unwanted sentencing disparities among similarly situated defendants, particularly where, as here, the defendant may not have specific knowledge of the type of drugs he is transporting. Counsel undersigned submits that Passapera Pinott should not be treated more harshly than Monreal-Rodriguez, a United States Border Patrol Agent guilty of trafficking at least 106 kg of cocaine and 107 kg of marijuana, facilitating the smuggling of $1.2 million into Mexico, and who was also involved in two separate firearm-related conspiracies.

On February 14, 2020, Jose Antonio Yanez was sentenced to 72 months' imprisonment followed by three years of supervised release for conspiring to possess with intent to distribute marijuana and importing a controlled substance. (CR-19-00923-001-TUS-JAS.) According to the factual basis set forth in his plea agreement, Yanez allowed over 4,500 kilograms of marijuana to be transported across the border, and personally imported alprazolam and tramadol into the United States on several occasions during 2018 and 2019.

On May 14, 2018, Alberto Michel was sentenced to 90 months' imprisonment followed by five years of supervised release for bribery and conspiracy to possess with intent to distribute in excess of 280 kilograms of marijuana. (CR-17-01733-001-TUC-DCB.)

Finally, on March 17, 2017, Juan Pimentel was sentenced to 160 months' imprisonment followed by five years of supervised release for bribery and attempted possession with intent to distribute at least five kilograms of cocaine. (CR-15-02236-001-TUC-RCC.) Pimentel was personally stopped with 50 kilograms of cocaine in his vehicle. He admitted he had planned to transport the cocaine to Chicago and expected to be paid $50,000. He also received cash payment in exchange for providing government intel.

Passapera Pinott recognizes the difficulty of comparing cases and individuals who come before a sentencing judge, but nonetheless asks this Court to consider the above-mentioned cases, all of which involved United States Border Patrol Agents who committed similar offenses, as providing some very helpful guidance on sentencing parity.

## III.   CONCLUSION

The stated goal of section 3553(a)(2)(D) is not punishment—rather, it is rehabilitation. *United States v. Autrey*, 555 F.3d 864, 877 (9th Cir. 2009). Given the factors listed above, it is respectfully recommended that this Court sentence

Passapera Pinott to a variant sentence of **135 months' imprisonment followed by five years of supervised release**.  That reflects the seriousness of the offense, promotes respect for the law, and serves as just punishment when viewed in conjunction with the facts of this case.  This sentence is appropriate under the circumstances and is sufficient but not greater than necessary under 18 U.S.C. § 3553(a).

RESPECTFULLY SUBMITTED this 7th day of February, 2024.

Law Office of
**HERNANDEZ & HAMILTON, PC**


*s/Clay Hernandez*
CLAY HERNANDEZ
Attorney for Defendant

# **CERTIFICATE OF SERVICE**

I, Julie Padilla, do hereby certify that on this 7th day of February, 2024, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing, and transmittal of a Notice of Electronic Filing was sent to the following recipients:

Hon. Jennifer G. Zipps
United States District Court

Gordon E. Davenport, Assistant
United States Attorney's Office

Amanda L. Knox, Senior Officer
United States Probation Department

Clay Hernandez
Attorney for Defendant

By *s/Julie Padilla*
    JULIE PADILLA