GARY M. RESTAINO
United States Attorney
District of Arizona
GORDON E. DAVENPORT III
Assistant U.S. Attorney
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Gordon.davenport.iii@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | 4:20-cr-01706-JGZ-MSA |
|---|---|
| Plaintiff, | |
| vs. | GOVERNMENT'S SENTENCING MEMORANDUM |
| Carlos Victor Passapera Pinott, | |
| Defendant. | |

Plaintiff, United States of America, has no objections to the PSR and intends to argue for a substantial sentence at sentencing. However, it files this response to defendant's Sentencing memorandum, Specifically Section C "Sentencing parity" on pages 10-13 which seeks to compare this defendant to other cases involving corrupt border patrol agents.

It is the government's position that for reasons stated below this case is singular due to the context within the time and place which it was committed and should not be comparable to other matters. Consistent with Fed R. Evid 201, the government will seek to provide sufficient evidence of that the Court may take judicial notice of any facts it finds relevant to support its sentence.

**Context 1: Fentanyl is Different in Kind than Marijuana and Cocaine**

The cases of prior corrupt Border Patrol Agents have typically involved large amounts of marijuana or cocaine. This case involves a mixture of drugs with the largest

amount being fentanyl pills. The Center for Disease Control describes fentanyl and surrounding use of it this way,

> Fentanyl is a synthetic opioid that is up to 50 times stronger than heroin and 100 times stronger than morphine. It is a major contributor to fatal and nonfatal overdoses in the U.S. There are two types of fentanyl: pharmaceutical fentanyl and illegally made fentanyl. Both are considered synthetic opioids. Pharmaceutical fentanyl is prescribed by doctors to treat severe pain, especially after surgery and for advanced-stage cancer. Fentanyl is a synthetic opioid that is 50 times stronger than heroin 100 times stronger than morphine. However, most recent cases of fentanyl-related overdose are linked to illegally made fentanyl, which is distributed through illegal drug markets for its heroin-like effect. It is often added to other drugs because of its extreme potency, which makes drugs cheaper, more powerful, more addictive, and more dangerous.

Available at https://www.cdc.gov/stopoverdose/fentanyl/index.html

Fentanyl use and abuse has expanded rapidly over the last few years and according to researchers at the University of California, Los Angeles (UCLA)[1] that examines trends in US overdose deaths from 2010-21 using data compiled by the US Centers for Disease Control and Prevention, it has "redefined drug overdoses." This chart from the cited paper



---

[1] Friedman and Shover, *Charting the Fourth Wave: Geographic, Temporal, Race/Ethnicity, and Demographic Trends in Polysubstance Fentanyl Overdose Deaths in the United States, 2010-2021* (available at https://www.medrxiv.org/content/10.1101/2022.11.04.22281945v1.full ).

illustrates its growth.

In a BBC story related to the study, Chelsea Shover, an assistant professor at UCLA's school of medicine and co-author of the study, said "In 2018, around 80% of fentanyl overdoses happened east of the Mississippi river," But in 2019, "fentanyl becomes part of the drug supply in the Western US, and suddenly this population that had been insulated from it is exposed, and death rates start to go up."[2] This is relevant because it places the defendant in the vanguard of aiding the expansion of fentanyl into this part of the country.

Further this timeline is supported by unrelated documentation. To determine whether the expansion within Arizona matched up with the time the defendant was involved in the drug conspiracy, the government drew upon the public records from the Maricopa County, the location of the drug distribution cell the defendant interacted with.

According to p.37 of the Maricopa County Office of the Medical Examiner 2020 Annual Report, "the number of fentanyl [Drug-Related Deaths] has continued to double annually most years since 2015 (4,300% increase in cases since 2015), quickly becoming the most common drug detected in overdoses (1,145 cases in 2020)."[3] The PCME also provided the following two charts that are relevant for context:



---

[2] How the fentanyl crisis' fourth wave has hit every corner of the US, available at https://www.bbc.com/news/world-us-canada-66826895

[3] Available at https://www.maricopa.gov/ArchiveCenter/ViewFile/Item/5237

First cases of drug-related deaths, by drug.

Second, the PCME provided a chart showing when those drug-related deaths occurred during the year. This version is from the 2021 report to provide the Court with an additional year of context. The government notes the rising spike in drug related death before the defendant's August 9 and a sharp drop in immediately after.



All this together should suggest that a kilogram of fentanyl and kilogram of cocaine (or marijuana) should be viewed as different in kind and differing culpability should attach to the act of joining such a conspiracy.

### Context 2: A Lot of Fentanyl for 2020

As the Court prepares to sentence the defendant now in 2024, one thing that can get lost is how significant this seizure was in 2020. As noted above the growth of fentanyl has been incredibly fast and it is not uncommon at this point to read of exceptionally large seizures. (e.g. *Over 220 Pounds of Suspected Controlled Substances Seized Including Pills Shaped to Resemble Heart Shaped Candy*, November 2023).[4] However, in 2020,

---

[4] Available at https://www.justice.gov/opa/pr/over-220-pounds-suspected-controlled-substances-seized-including-pills-shaped-resemble-heart

- 4 -

possession of 350,00 pills reflected a serious involvement at a crucial expansion point in the drug. To aid the Court in contextualizing this case in the time and place of commission, government directs the Court to the study done by Dr. Joseph J. Palamar, Ph.D., M.P.H., associate professor at the NYU Grossman School of Medicine and co-investigator on the NIDA-funded National Drug Early Warning System (NDEWS).

Based on Dr. Palamar's calculation[5] the estimated number of fentanyl pills seized in the United States in 2020 was 4,149,027. The seizure at issue in this case represents approximately 350,000 pills. Assuming Dr. Palamar is accurate, this seizure represents about 8.5% of the fentanyl pills seized in the United States in 2020. Obviously, this number does not represent the total amount of fentanyl pills *present* in the U.S., but one person, with one load representing nearly 1/10 of the nationwide seizures of a deadly narcotic underscores the seriousness of the offense and differentiates this from other corrupt border patrol cases.

### **Context 3: Covid and Border Closure**

Another thing that differentiates this from the other corrupt border patrol cases, is that this arrest was during the early months of COVID.

Between March 2020 and November 2021, to combat COVID, the U.S. closed land borders to all but U.S. citizens, legal permanent residents and any other travelers considered essential, such as health care workers or students. Mexican nationals with tourist visas were barred from entering the U.S..[6]

Additionally, Arizona had a stay-at-home order until May 16, 2020. (See Order

---

[5] JJ Palamar, et al. Trends in seizures of powders and pills containing illicit fentanyl in the United States, 2018 through 2021. Drug and Alcohol Dependence. DOI: 10.1016/j.drugalcdep.2022.109398 (2022). Available at https://www.sciencedirect.com/science/article/abs/pii/S0376871622001351?via%3Dihub

[6] "Happy to see you again": U.S. reopens land borders with Mexico to vaccinated travelers after 19 months, Texas Tribune available at https://www.texastribune.org/2021/11/08/texas-mexico-border-reopens/

2020-36: Stay Healthy, Return Smarter, Return Stronger). Non-essential businesses were closed between March and May 2020 and suffered various constraints and pauses until wide-spread vaccination was available.

An important piece of the context of this case, is that the defendant was a corrupt public servant profiting off his position at a time when the nation was suffering a significant public health crisis and many regular people were sacrificing greatly for the common good. Additionally, the defendant's status as a Border Patrol Agent allowed him the access and freedom as an essential worker and provided him a reason to be near the border at a time when lawful access was curtailed for many law-abiding people and their families. The defendant's betrayal of his oath comes at a time of unusual vulnerability for this country and her people, and this should be reflected in his sentence.[7]

## **Conclusion**

The government asks that the Court consider these additional contexts when evaluating the defendant's sentencing disparity claim and evaluating the nature and seriousness of the offense.

Respectfully submitted this 13th day of February 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/Gordon E. Davenport III*
GORDON E. DAVENPORT III
Assistant U.S. Attorney

Copy of the foregoing served electronically or by other means this 13th day of February 2024, to:

Robert Clay Hernandez, Esq.
Attorney for defendant

---

[7] If the Court considers the defendant's alien smuggling as relevant conduct, the closed border and the pandemic are of especially important context.